

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-6-2002

# USA v. Corbett

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4419

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Corbett" (2002). *2002 Decisions.* Paper 481.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/481

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-4419
_____

UNITED STATES OF AMERICA

v.

AMARYLLIS E. CORBETT

Amaryllis E. Corbett, B.A., M.A.,
                                        Appellant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 00-cr-00063
District Judge:  The Honorable Donetta W. Ambrose
_____

Argued July 22, 2002
_____

Before: SLOVITER, NYGAARD, and BARRY, Circuit Judges

(Opinion Filed: August 6, 2002)
_____

Renee Pietropaolo, Esquire (Argued)
W. Penn Hackney, Esquire
Karen S. Gerlach, Esquire
Office of Federal Public Defender
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222

Attorneys for Appellant


Robert S. Cessar, Esquire (Argued)
Bonnie R. Schlueter, Esquire
Michael L. Ivory, Esquire
Office of the United States Attorney
633 United States Post Office & Courthouse
Pittsburgh, PA 15219

Attorneys for Appellee
_____

OPINION
_____


BARRY, Circuit Judge
     Following a jury trial in the United States District Court for the Western District

of Pennsylvania, appellant Amaryllis E. Corbett was convicted of five counts of income tax evasion in violation of 26 U.S.C. 7201, two counts of wire fraud in violation of 18 U.S.C. 1343, and two counts of mail fraud in violation of 18 U.S.C. 1341. The District Court sentenced Corbett, as relevant here, to thirty months of imprisonment and restitution in the amount of $107,241.60 to the Social Security Administration ("SSA") and $260,674.71 to the Office of Personnel Management ("OPM"). Corbett appeals only her tax evasion convictions and her sentence. We have jurisdiction pursuant to 18 U.S.C. 3742(a) and 28 U.S.C. 1291 and will affirm Corbett's convictions but vacate her sentence.

We write only for the parties who are familiar with the facts of the case, so we need not repeat them here. Accordingly, we will forthwith address the three arguments raised by Corbett  that insufficient evidence supports her convictions for tax evasion because the United States failed to prove an affirmative act of evasion for the periods charged in the Indictment; that the District Court erred in instructing the jurors to examine any conduct from any time period to find an affirmative act of evasion; and that the tax evasion and fraud counts should have been grouped under U.S.S.G. 3D1.2.

I.

Corbett argues that there is insufficient evidence of an affirmative act of evasion during the time frame of the Indictment to support her convictions for tax evasion. We view the evidence in the light most favorable to the government and will sustain the jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); accord United States v. McGill, 964 F.2d 222, 229-30 (3d Cir. 1992). Section 7201 prohibits a person from "willfully attempt[ing] in any manner to evade or defeat any tax imposed by this title or the payment thereof." The essential elements of this offense are: (1) willfulness; (2) a tax deficiency; and (3) an affirmative act of evasion. Sansone v. United States, 380 U.S. 343, 351 (1965) (citations omitted). Corbett's argument is limited to the third element.

To be convicted of tax evasion, a defendant must commit some willful act in addition to not filing a return and not paying the tax due. Spies v. United States, 317 U.S. 492, 499 (1943). Examples of such acts include concealing assets, hiding sources of income, and avoiding recorded transactions. Id. "[A]ny conduct, the likely effect of which would be to mislead or to conceal" qualifies as an affirmative act. Id.

Here, the evidence shows that Corbett committed numerous affirmative acts of evasion. First, she maintained the Mellon Bank account under her name and that of her mother, Dr. Jane Matuzel, after the latter's death and conducted all transactions via the ATM in order to minimize in-person contact with bank employees. This included the deposit of separate monetary U.S. Treasury checks made payable to Jane Matuzel, one based on widow's survivors benefits from the SSA and the other based on Dr. Matuzel's pension benefits from the OPM. On the few occasions when Corbett did communicate with bank personnel, she failed to mention Dr. Matuzel's death, and in the case of the November 25, 1997 letter, used the words "we" and "our" to refer to the account. Second, Corbett opened a post office box in her and Dr. Matuzel's names in 1987, even though Dr. Matuzel had been dead for almost four years. Corbett paid the biannual rent in cash and used the post office box to collect Dr. Matuzel's social security checks. She refused to accept certified mail from the IRS or to respond to the notices sent by the SSA. The one exception is when Corbett signed Dr. Matuzel's name to a SSA payment review form in November 1996. Each of these acts is sufficient to satisfy the third element of the crime of willful evasion of assessment.

Corbett counters that, regardless of the nature of her conduct, none of her acts occurred within the time frame set forth in the Indictment and, thus, cannot form the basis of her convictions for tax evasion. The Indictment charged Corbett with committing tax evasion on or about the fifteenth of April in the years 1994 through 1998. The evidence showed that Corbett continuously operated her ATM scheme through January 1999. Likewise, Corbett continuously rented and used the post office box during every year alleged in the Indictment. Moreover, with specific reference to certain specific counts, on November 15, 1996, Corbett signed Dr. Matuzel's name to the SSA payment review form and returned it to the SSA. This act is sufficiently near the April 15, 1996 date alleged in count three of the Indictment. Her response to Mellon Bank's

"no contact" letter in July 1997 and her "we" letter of November 25, 1997 occurred within the time frame alleged in count four. Finally, her deposit of U.S. Treasury checks made payable to Dr. Matuzel in May 1998 falls within the April 15, 1998 date alleged in count five.

In sum, sufficient evidence supports Corbett's convictions for tax evasion.

## II.

Corbett also argues that the District Court incorrectly instructed the jury to look at any conduct from any time period to find an affirmative act of evasion. Corbett did not raise this argument before the District Court; therefore, plain error review applies. Under plain error review, we may exercise our discretion to correct an error that is plain and that affects the "substantial rights" of the defendant. United States v. Olano, 507 U.S. 725, 732 (1993).

Corbett's attack on the jury instructions consists of two parts. First, Corbett suggests that the language in the jury instructions, "[a]ny conduct of the Defendant having the likely effect of misleading or concealing will support a finding of guilt of tax evasion," misstates the law on affirmative acts. Corbett is wrong. This language tracks almost precisely the language used by the Supreme Court in Spies, which defines an affirmative act as "any conduct, the likely effect of which would be to mislead or to conceal." Spies v. United States, 317 U.S. 492, 499 (1943). By including the above language in the jury instructions, the District Court did not err.

Second, Corbett maintains that the District Court constructively amended the Indictment when it charged the jury to consider as affirmative acts conduct that occurred "prior to the tax year, concomitant with the tax year, or subsequent with the tax year." A constructive amendment arises when a defendant is deprived of his or her "substantial right to be tried only on charges presented in an indictment returned by a grand jury." United States v. Miller, 471 U.S. 130, 140 (1985) (quoting Stirone v. United States, 361 U.S. 212, 217 (1960)); accord United States v. Syme, 276 F.3d 131, 148 (3d Cir. 2002). Under plain error review, a constructive amendment is presumed prejudicial. Syme, 276 F.3d at 136, 154.

Corbett is correct when she argues that the District Court erred in instructing the jury to consider acts that transpired before the dates alleged in the Indictment. See United States v. Voigt, 89 F.3d. 1050, 1089 (3d Cir. 1996) ("[T]he government's failure to include a predeficiency period in the indictment's specification of the offense precludes it from relying on conduct predating the existence of the deficiency as substantive evidence of affirmative acts of evasion."); accord United States v. McGill, 964 F.2d 222, 231 (3d Cir. 1992). This error, however, is harmless as there are no acts upon which the jury could have relied that did not continue through the dates of the Indictment. Although Corbett started her ATM scheme sometime after Dr. Matuzel's death in 1983, she continued her modus operandi until January 1999. Similarly, Corbett continued using the post office box that she opened in 1987 until at least the fall of 1998. No other conduct began prior to April 15, 1994.

## III.

In addition to attacking her convictions for tax evasion, Corbett contests her sentence. Specifically, Corbett asserts that the tax evasion counts should have been grouped with the mail and wire fraud counts under U.S.S.G. 3D1.2 because her criminal conduct was all part of one scheme to defraud the United States of Dr. Matuzel's retirement benefits. A district court's factual findings underpinning a grouping determination are reviewed for clear error while its interpretation of the Sentencing Guidelines is reviewed de novo. United States v. Vitale, 159 F.3d 810, 813 (3d Cir. 1998).

Section 3D1.2 provides that closely related counts shall be grouped for purposes of calculating the total offense level. Counts are closely related if they involve "substantially the same harm," which exists:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
>
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G.   3D1.2 (2001).

At sentencing, Corbett advanced arguments under each of the four subsections.  It appears, however, that the District Court rejected Corbett's arguments based on our decisions in United States v. Astorri, 923 F.2d 1052 (3d Cir. 1991), and United States v. Vitale, 159 F.3d 810 (3d Cir. 1998).  The District Court was correct in relying on Astorri and Vitale in rejecting Corbett's argument under  3D1.2(c).  See Astorri, 923 F.2d at 1057; Vitale, 159 F.3d at 815.  Neither case, however, discusses the propriety of grouping tax evasion counts with fraud counts under the remaining subsections. Accordingly, Corbett's sentence will be vacated and the case remanded to the District Court for analysis under U.S.S.G.   3D1.2(a), (b), and (d).

In analyzing the issue of grouping, the District Court should consider those subsections' requirements.  In order for   3D1.2(a) and (b) to apply, there first must be a finding that the counts involve the same victim.  Indirect and secondary victims should be excluded.  U.S.S.G.   3D1.2, cmt. n.2 (2001).  "Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim."  Id.

If the District Court concludes that there is only one victim, it should proceed to the second requirement of   3D1.2(a), the same act or transaction, and of   3D1.2(b), two or more acts connected by a common objective.  Although legally distinct, offenses may be grouped if they "are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim."  U.S.S.G.   3D1.2, cmt. n.4 (2001); see United States v. Riviere, 924 F.2d 1289, 1306 (3d Cir. 1991); see also United States v. Cusumano, 943 F.2d 305, 313 (3d Cir. 1991) (upholding district court's grouping of conspiracy, money laundering, embezzlement, unlawful kickbacks, and travel act offenses).

Finally, the District Court should consider whether grouping would be appropriate under   3D1.2(d).  This subsection permits grouping when the counts are of "the same general type" and "the offense level is determined largely on the basis of the total amount of harm or loss."  United States v. Seligsohn, 981 F.2d 1418, 1425 (3d Cir. 1992) (citations omitted); see United States v. Rudolph, 137 F.3d 173, 180 (1998).

### IV.

For the foregoing reasons, we will affirm Corbett's convictions for tax evasion but vacate her sentence and remand the matter to the District Court for reconsideration of the sentence imposed.

/s/ Maryanne T. Barry
Circuit Judge